IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00265-REB-MEH

THOMAS DEAN BROWN,

     Applicant,

v.

THE C.D.O.C.,
FMCC WARDEN CARL ZENNON, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

     Respondents.

## RECOMMENDATION FOR DISMISSAL

Before the Court is Applicant's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #3]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation. For the reasons set forth below, the Court recommends that the Application be **denied**.

**I.    Facts**

Applicant Thomas Brown was convicted in 2002 in Mesa County District Court for distribution of a controlled substance, possession of a controlled substance, possession of a weapon by a felon, tampering with physical evidence, and possession of drug paraphernalia. Record, Exh. A, p.1. Brown was sentenced to 17 years imprisonment. Answer at 3. His conviction was based in part on the testimony of an informant who testified that he purchased drugs from Brown. The informant was arrested on September 22, 2001, and told officers that he purchased the drugs from Brown and that he had purchased drugs from Brown the day before as well. The informant agreed

to cooperate with officers by arranging the purchase of additional drugs from Brown. Brown was arrested at the arranged meeting place. He possessed metallic knuckles, a butane torch, baggies, and finger scales. Brown's girlfriend, a passenger in the car at the time of Brown's arrest, admitted that she had methamphetamine in her bra because Brown had told her to hide the drugs. Record, Exh. A, pp. 2 - 4.

At trial, Brown sought to introduce the testimony of the informant's roommate, Robert Rice, who would testify that the informant and his wife were with him at home the day before at the time that the informant allegedly purchased drugs from Brown. Record, Exh. A, p.15. The prosecution sought to cross-examine Rice on three issues: (1) whether he was taking drugs at the time that he was allegedly with the informant and his wife; (2) whether the drugs the informant purchased were for Rice; and (3) a pending felony case against Rice. Answer at 12. Rice indicated that he would assert his Fifth Amendment rights and would refuse to answer questions regarding these areas on cross. The trial court, thus, excluded Rice's testimony based on his refusal to answer questions on cross. Record, Exh. A, p.15.

Brown appealed his conviction to the Colorado Court of Appeals, which affirmed this part of his conviction. The Colorado Supreme Court denied Brown's Writ of Certiorari, and Brown timely filed the instant Writ of Habeas. Brown argues that the trial court's exclusion of the testimony of Rice violated his right to present testimony on his own behalf.

**II.     Discussion**

    **A.     Standard of Review**

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan* , 526 U.S. at 845. Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see, also, Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a

> rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Thus, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied. *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence

in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *O'Neal* addresses the situation where a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. In such a case, *O'Neal* instructs a court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht*, 507 U.S. at 623).

### B.  Applicant's Claim: Exclusion of Rice's Testimony

Brown argues that the matters about which the prosecution sought to cross-examine Rice are collateral to his testimony and, therefore, an improper basis for excluding his entire testimony. Application at 10. Brown also alleges that the prosecution could have called the informant's wife as a rebuttal witness and, thus, did not need to cross-examine Rice on the topics listed above to properly attack Rice's testimony. *Id.* at 11.

The Colorado Court of Appeals pointed out that the purpose of cross-examining Rice on whether he was taking drugs at the time he was allegedly with the informant and his wife was to determine Rice's "ability to perceive what was going on during that time period." Record, Exh. D., p. 7. The Court of Appeals concluded that this cross-examination was directly related to Rice's testimony and the reliability of the same. The Court of Appeals found that "because the prosecution had no other means to challenge the witness's credibility, the court properly denied defendant's request to call R.R. as a witness." *Id.* at 8. Brown argues to this Court, for the first time, that the informant's wife could have challenged the witness's credibility by giving rebuttal testimony. Application at 11. To the Colorado Court of Appeals, Brown argued only that the cross-examination related to collateral matters, rather than directly to Rice's testimony. Record, Exh. A, p.15.

Because Brown failed to raise the availability of a rebuttal witness on direct appeal, he must establish that the alleged error "worked to his actual and substantial disadvantage, infecting his entire [proceedings] with error of constitutional dimensions." *Shoemaker v. Ward*, 154 Fed. Appx. 690, 692 (2005). It is insufficient for Brown to show that the availability of rebuttal testimony would change the Court of Appeals determination of state law; he must establish that the Court of Appeals' ruling violates a constitutional right as determined by the United States Supreme Court. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This he cannot do.

Regarding the distinction between direct and collateral matters on cross-examination, the Ninth Circuit Court of Appeals recently held:

> While the right to call witnesses on behalf of the defense is well established, the Supreme Court has indicated that the right is not without limitation and it has never indicated that a trial court has no discretion in determining whether the areas on which a defense witness has properly invoked the Fifth Amendment will so affect the probative value or prejudicial impact of his testimony as a whole that he should not be allowed to take the stand at all.

*Arredondo v. Ortiz*, 365 F.3d 778, 783 (9th Cir. 2004). Indeed, the Supreme Court has explained the potential limitation on a defendant's witness: "[T]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988). Thus, current Supreme Court precedent does not support Brown's distinction between collateral and direct matters of cross-examination.

Moreover, even if a distinction between collateral and direct matters was warranted, the Court of Appeals held that a cross-examination regarding Rice's drug use at the time that Rice would testify that the informant was at home was directly relevant to Rice's ability to perceive the events that took

place. Record, Exh. D, p.8. This Court cannot conclude that this is an unreasonable determination based on the record. *E.g.*, *United States v. McKneely*, 69 F.3d 1067, 1076 (10th Cir. 1995) (finding that striking the entire testimony of a defendant's witness was appropriate when the witness testified that he did not purchase drugs from the defendant but refused on cross to state from whom he purchased the drugs).

Finally, Brown argues that the trial court should have allowed Rice to testify question by question and should have later determined whether parts of the testimony should be stricken, rather than excluding all of his testimony. The Court of Appeals concluded that the questions were directly related to Rice's testimony, and therefore, found no violation for the trial court's refusal to allow the testimony at all. Record, Exh. D., p. 8. Brown's distinction between striking testimony already given and precluding testimony before hand has no basis in Supreme Court precedent. *See Arredondo*, 365 F.3d at 780 (finding no violation in trial court's refusal to allow a defense witness to testify on direct). In this regard, the state court adjudication was neither contrary to nor an unreasonable application of the law, as determined by the Supreme Court; nor was it based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, federal habeas relief on this claim is appropriately denied.

### III.   Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed February 16, 2006; Docket #3] be **denied**, and that this case be dismissed with prejudice. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to

obtain reconsideration by the District Judge to whom this case is assigned.[1]

Dated at Denver, Colorado this 15th day of December, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).